IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America,

    Plaintiff,

  v.                                  Case No. 2:08-cv-1084

133 Firearms with 36
Rounds of Ammunition,

    Defendants.

OPINION AND ORDER

    This is an _in rem_ civil forfeiture action brought by the government against 133 firearms and 36 rounds of ammunition. The verified complaint for forfeiture filed on November 14, 2008, alleges that the defendant firearms and ammunition were involved in and intended to be used in one or more violations of 18 U.S.C. §922(a)(1)(A), engaging in the business of dealing in firearms without a license, and that the defendants are therefore subject to forfeiture pursuant to 18 U.S.C. §924(d)(1) and (3). According to the complaint, the firearms and ammunition were seized from the residence of Terry Thompson, 270 Kopchak Road, Zanesville, Ohio, on June 18, 2008, during the execution of a search warrant by agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The complaint includes a list of the defendant firearms.[1] On December 29, 2008, Terry Thompson and his wife, Marian Thompson,

---

[1] Eight of the listed firearms were the subject of an indictment filed against Terry Thompson in Case No. 2:09-cr-43. On April 4, 2010, pursuant to a plea agreement, Mr. Thompson entered a guilty plea to Counts 2 and 3 of the indictment, charging him with unlawful possession of machine guns and of firearms without serial numbers, and agreed to forfeit the eight firearms. A final order of forfeiture was filed on December 7, 2010. The eight firearms forfeited in the criminal case are identified as Item Numbers 41, 113, and 127-132 in the instant case.

filed a verified claim to the firearms, claiming joint ownership of the defendant firearms and ammunition.

On January 19, 2012, a notice of death was filed concerning the death of Terry Thompson on October 18, 2011. A motion for substitution of his estate as a party has ben filed and is unopposed. The motion to substitute Terry Thompson's estate as a party will be granted.

I. Summary Judgment Standards

This matter is before the court on the government's motion for summary judgment. Counsel for the estate has indicated that no further briefing is required following the substitution of the estate as a party. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) and (B). In considering a motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688

(6th Cir. 2011).

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial.  Id.  Once the moving party meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial.  Id. at 322 n. 3.  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298 (6th Cir. 2008).  A fact is "material" only when it might affect the outcome of the suit under the governing law.  Id; Anderson, 477 U.S. at 248.

II. Background

According to the affidavit of ATF Agent James M. Ash (Doc. 3), marked as Exhibit A and submitted in verification of the complaint, Terry Thompson was formerly a federally licensed firearms dealer. Mr. Thompson surrendered his license in April, 2003, and turned in his records to ATF on or about January 26, 2004, thereby terminating his license to sell firearms.  At that time, Mr. Thompson's reported inventory consisted of 55 firearms. Doc. 3, ¶ 3.  By letter dated March 5, 2004, ATF informed Mr. Thompson that it had received his firearms records, that his license had been placed on inactive status, and that he was no longer authorized to conduct business using the license.  Doc. 60, Ex. A.

The affidavit describes conversations between a confidential

informant and Mr. Thompson during meetings on April 24, 2008, May 13, 2008, and May 20, 2008, at Mr. Thompson's residence, 270 Kopchak Road, Zanesville, Ohio. The informant wore a wire during these meetings and the conversations were recorded. Excerpts from the transcripts of these recordings are included in the record. During these meetings, Mr. Thompson showed the informant various firearms, and discussed other firearms sales he had made recently. At the meeting on May 20, 2008, the informant purchased a Smith & Wesson .44 caliber revolver, a Remington 12 gauge shotgun, and nine rounds of ammunition from Mr. Thompson for $1,500 in cash, and Mr. Thompson provided a signed, handwritten receipt for the firearms. Mr. Thompson told the informant that he surrendered his firearms license because he did not like to fill out the paperwork, and that he would not divulge anything about the firearms purchase to the authorities.

On June 18, 2008, a search warrant was executed at the Kopchak Road residence, resulting in the seizure of 133 firearms and 30 rounds of ammunition. Five of the weapons were fully automatic, and eight of the weapons were classified. At least 100 of the weapons were not in Mr. Thompson's reported inventory at the time he surrendered his federal firearms license. Doc. 3, ¶ 11. Several of the firearms seized had price tags affixed to them. Doc. 60, Ex. D. The agents did not uncover any evidence during the investigation that Mrs. Thompson was involved with dealing in firearms without a license, and Agent Ash characterized Mrs. Thompson's participation in the discussions with the informant as being .5 percent. Ash Dep. pp. 72, 90.

The record also includes the declarations of Mr. and Mrs. Thompson and excerpts from their depositions. Mr. Thompson

4

testified that two of the seized firearms belonged to his friend, Tom Absalon, and that he had possession of the guns to sell for Mr. Absalon. Mr. Thompson testified that when he surrendered his license, he transferred all of the firearms in his inventory to his name. TT Dep. p. 26. Mr. Thompson couldn't say exactly how often he sold a firearm after he surrendered his license, but stated the sales were "very, very causal." TT Dep. pp. 67-68. He also testified that Mrs. Thompson had an interest in the firearms because her money was used in their purchase. TT Dep. p. 59. In his declaration, Mr. Thompson stated that since 2003, he has only made occasional casual sales as part of his personal firearm collection, and that the principal objective of the gun collection was for his personal enjoyment. TT Decl., ¶¶ 6, 8. He denied engaging in repetitive purchases and resales of firearms, and stated that he has never engaged in the business of selling firearms without a license. TT Decl., ¶¶ 9-10, 12.

    Mrs. Thompson testified at her deposition that she acted as her husband's secretary in their businesses and knew what he was paying for the weapons he bought. MT Dep., p. 26. She stated that the 22 firearms transferred from the business inventory which were not recovered during the search were traded on vehicles or motorcycles that they sold, and that Mr. Thompson acquired the additional 100 firearms through trading. MT Dep., pp. 26-27. Mrs. Thompson stated that she did not personally trade, but that she was usually there when firearms were delivered. MT Dep., p. 27, 29. She stated that she was part owner of the firearms because she gave her paycheck to her husband. MT Dep. p. 33. Mrs. Thompson denied that she or her husband engaged in repetitive purchases or resales of firearms or the business of selling firearms without a license.

MT Decl. ¶¶ 4-5, 7.

III. Forfeiture Standards

The government seeks forfeiture of the defendant firearms pursuant to 18 U.S.C. §924(d). Under that section, "any firearm or ammunition involved in or used in any ... willful violation of any other provision of this chapter ... or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture[.]" 18 U.S.C. §924(d)(1). Forfeiture actions under §924(d) are civil proceedings. United States v. Eighty-Six Firearms and Twenty-Two Rounds of Ammunition, 623 F.2d 643, 644 (10th Cir. 1980).

Where it is alleged that the firearm was "involved in or used in" any of the offenses listed in 18 U.S.C. §924(d)(3), the government's burden of proof is by a preponderance of the evidence. United States v. Four Hundred Seventy Seven (477) Firearms, 698 F.Supp.2d 890, 892-93 (E.D.Mich. 2010). In addition, where the government's theory of forfeiture is that the property was used to commit or was involved in the commission of a criminal offense, the government must establish that there was a substantial connection between the property and the offense. 18 U.S.C. §983(c)(3). Where the basis for forfeiture is that the firearm was intended to be used in one of the enumerated offenses, the government's burden is by clear and convincing evidence. Four Hundred Seventy Seven (477) Firearms, 698 F.Supp.2d at 982-93.

For purposes of §924(d)(1), the term "used" means more than mere possession, and entails active employment or utilization of the firearm. United States v. Cheeseman, 600 F.3d 270, 276-78 (3d Cir. 2010). The term "involved in" means "to engage as a

6

participant;" "to relate closely;" "to have within or as part of itself;" or "to require as a necessary accompaniment." Id. at 278 (quoting Merriam-Webster's Collegiate Dictionary 660 (11th ed.2003)). The display of firearms to prospective buyers, particularly firearms with price tags, may help support a finding that the firearms were "involved" in a §922(a)(1)(A) offense. See United States v. Kish, 424 Fed.Appx. 398, 405-06 (6th Cir. March 30, 2011); Eighty-Six Firearms, 623 F.2d at 645; United States v. One Assortment of 12 Rifles and 21 Handguns, 313 F.Supp. 641, 642 (N.D.Fla. 1979).

The list of offenses in paragraph (3) includes an offense under 18 U.S.C. §922(a)(1). 18 U.S.C. §924(d)(3)(C). Section 922(a)(1) provides in relevant part that it shall be unlawful for any person except a licensed firearms dealer "to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce[.]" 18 U.S.C. §922(a)(1)(A). However, §924(d) is broader in scope than the criminal sanctions provided under §922(a)(1), and subjects to forfeiture firearms and ammunition which are "involved in or used" or which are "intended to be used in" any violation of §922(a)(1). United States v. One Assortment of 89 Firearms, 465 U.S. 354, 364-65 (1984); United States v. One Assortment of Seven Firearms, 632 F.2d 1276, 1279 (5th Cir. 1980)(forfeiture under §924(d) may be ordered where government shows an intent to violate §922).

To sustain a conviction under §922(a)(1)(A), the government must prove that the defendant "willfully" violated that section. 18 U.S.C. §924(a)(1)(D); Bryan v. United States, 524 U.S. 184, 188-89 (1998). In order to establish a "willful" violation of the

statute, the government must prove that the defendant "acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful."  Id. at 193.  However, the government does not have to prove that the defendant acted with knowledge of the licensing requirement or knowledge of the particular law which made his conduct illegal.  Id. at 191-196.

The term "dealer" means "any person engaged in the business of selling firearms at wholesale or retail[.]" 18 U.S.C. §921(a)(11). As applied to a dealer in firearms, the term "engaged in the business" means

> a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms[.]

18 U.S.C. §921(a)(21)(C).

The term "with the principal objective of livelihood and profit" means that "the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection[.]"  18 U.S.C. §921(a)(22).  No minimum number of sales, dollar volume of sales, or number of employees is required to constitute "engaging in business."  United States v. Gross, 313 F.Supp. 1330, 1333 (S.D.Ind. 1070); see also United States v. Powell, 513 F.2d 1249, 1250 (8th Cir. 1975)(dealing in firearms need not be a defendant's primary business, nor is it required that the defendant must make a certain amount of profit from it in order to be found guilty

8

under §922(a)(1)); <u>United States v. Approximately 627 Firearms, More or Less</u>, 589 F.Supp.2d 1129, 1134 (S.D.Iowa 2008).

<u>IV. Application of Standards in this Case</u>

<u>A. Violation of §922(a)(1)(A)</u>

The first issue is whether Mr. Thompson was engaged in the business of selling firearms without a license. In this case, the evidence shows that Mr. Thompson sold six firearms within the period of a month. In addition, 22 firearms from his original inventory were not recovered during the search of his residence, and an additional 100 firearms seized in the search were not part of the transferred inventory. However, over four years had passed since Mr. Thompson had surrendered his license. Mr. Thompson described the frequency of his gun transactions as "very casual" and "very minimal." While the record includes evidence which would support a finding that Mr. Thompson was engaged in the business of selling firearms without a license, there is also evidence which might weigh against such a finding, and which is sufficient to create a genuine dispute on that point.

The next issue is whether the firearms were "involved in" or "intended to be used in" the offense of selling firearms without a license. The government must prove that forfeiture is warranted as to each firearm sought to be forfeited. Even assuming <u>arguendo</u> that Mr. Thompson was engaged in the business of selling firearms, it is not clear from the evidence before the court whether all or just some of the 133 firearms were "involved in" or "intended to be used in" the offense, or had a substantial connection to the offense.

For example, the fact that the informant was shown other guns which were located at Mr. Thompson's residence would help support

9

a finding that those firearms were "involved in" the offense, in that they were being offered to excite the interest of a potential buyer. However, the record does not clearly show which of the firearms on the list attached to the complaint were shown to the informant. There is evidence that some of the firearms had price tags on them. However, the photographs do not show what the tags say. Claimants argue that many of the tags were old or simply contained information concerning the firearm, with no price. There were weapons which were old, in poor condition or inoperable. However, there were other weapons which, according to Mr. Thompson, could be purchased as long as the buyer had the cash. Mrs. Thompson testified that some firearms, located in a wooden box under the stairs, formerly belonged to Mr. Thompson's father and were set aside for his nephew; these firearms presumably were not for sale. Thus, even assuming that Mr. Thompson committed an offense under §922(a)(1)(A), based on the record currently before the court, a genuine dispute exists as to which of the firearms was "involved in" or "intended for use in" the offense.

B. Mr. Thompson's Status as a Convicted Felon

The government argued that Mr. Thompson could not prevail as a claimant because the firearms could not be returned to him due to his status as a convicted felon, and that Mr. Thompson could not designate a third party to receive the firearms on his behalf. As a general rule, "seized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated." Sovereign News Co. v. United States, 690 F.2d 569, 577 (6th Cir. 1982). However, the person seeking return of property must show that they are lawfully entitled to possess it. United States v. Headley, 50 Fed.Appx. 266, 267 (6th Cir. 2002).

Headley was a case in which the defendant sought the return of firearms under Fed.R.Crim.P. 41(e). The court in Headley concluded that the property could not be returned to defendant because a convicted felon is prevented from possessing firearms. Id. The court further concluded that since possession may be both actual and constructive, the defendant lacked the power to delegate the authority to possess firearms to another individual, or to request that the firearms be transferred to a third party. Id. (citing United States v. Craig, 896 F.Supp. 85, 89 (N.D.N.Y. 1995)). These holdings stem from the reasoning that returning firearms to a convicted felon would be against the law, and also contrary to the public policy which seeks to keep guns out of the hands of convicted felons, and that the firearms should not be returned to a third person, such as a friend or relative designated by the defendant, because the defendant might still exercise constructive possession, i.e., dominion and control, over the firearms.

However, the instant case does not involve a request for the return of property under Rule 41(e), but rather a civil forfeiture proceeding. The government must first prove that the firearms are subject to forfeiture. If the government fails to meet its burden, the issue then becomes to whom the firearms may be returned. Courts have recognized that even when a convicted felon has been stripped of a possessory interest in firearms, he still has a constitutionally protected property interest limited to an ownership interest. See United States v. Miller, 588 F.3d 418, 419-20 (7th Cir. 2009); Cooper v. City of Greenwood, 904 F.2d 302, 305 (5th Cir. 1990).

In this case, Mr. Thompson is now deceased, and his estate has been substituted as a party. The general practice in forfeiture

matters is to look to the law of the jurisdiction that created the property right to determine the claimant's legal interest. United States v. Salti, 579 F.3d 656, 668 (6th Cir. 2009); United States v. Four Hundred Seventy Seven (477) Firearms, 698 F.Supp.2d 894, 899 (E.D.Mich. 2010). Mr. Thompson was an Ohio resident. Under Ohio law, the estate and heirs now hold whatever property interest Mr. Thompson had in the firearms. See Czako v. Orban, 133 Ohio St. 248, 250, 13 N.E.2d 121 (1938)(heirs occupy the place of the decedent and take the same interest in his property as he had at the time of his death); Hopper v. Nicholas, 106 Ohio St. 292, 302, 140 N.E.2d 186 (1922)(administrator and heir at law of estate stands in the legal shoes of the decedent); Kelley v. Buckley, 193 Ohio App.3d 11, 33, 950 N.E.2d 997 (2011)(a decedent's legal representative stands in the shoes of the decedent with respect to his financial and commercial rights and obligations). The parties have cited no law which would preclude the estate or Mr. Thompson's heirs (assuming they are not convicted felons) from possessing firearms or from taking custody of the firearms if the government fails to meet its burden. The public policy considerations which favor keeping firearms out of the hands of convicted felons do not apply to the estate and Mr. Thompson's heirs. Thus, if the government fails to prove that the firearms are forfeitable and the estate proves an ownership interest in the firearms through Mr. Thompson's interest, the court is presently unaware of any authority which would preclude turning toe firearms over to the estate.

C. Standing of Marion Thompson as a Claimant

The parties have addressed the issue of whether Marion Thompson has an ownership interest in the defendant firearms. To

contest a government forfeiture action, a claimant must have standing. Four Hundred Seventy Seven (477) Firearms, 698 F.Supp.2d at 898. A claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property. Id. at 899. A claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property. United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 497 (6th Cir. 1998). Colorable claims which confer standing include an ownership interest. Id. at 498. Possessory interests may also be sufficient to confer standing if some explanation is provided regarding the claimant's relationship to the seized property. Id.

Mrs. Thompson argues that she has an ownership interest in the firearms because it is marital property. She relies on the definition of "marital property" in Ohio Rev. Code §3105.171. However, that section applies to the division of property in the event of a divorce or other legal separation, and is not applicable here. There is no community property in Ohio, and marriage does not grant a wife an interest in her husband's real or personal property except as statutorily granted for support and dower. State v. Garber, 125 Ohio App.3d 615, 617, 709 N.E.2d 218 (1998). Under Ohio Rev. Code §3103.07, each spouse is entitled to take, hold and dispose of his or her property as if unmarried, and ownership of property by one spouse is as distinct from ownership by the other as if the spouses were strangers. Id.; Ohio Rev. Code §3103.07. Therefore, Mrs. Thompson does not have an ownership interest in the defendant firearms simply because of her marriage.

However, Mrs. Thompson stated in her declaration that she contributed financially towards the operation of the former

firearms business.  She also stated in her deposition that she gave every paycheck to her husband, who used them in their businesses.  Mr. Thompson also testified in his deposition that Mrs. Thompson contributed financially to the former firearms business.  Thus, there is some evidence that she has a partial ownership interest in at least the 33 guns which were previously a part of the inventory of the business.  She also may have an ownership interest if she is a beneficiary of her husband's estate.  This is sufficient to create a genuine dispute regarding her status as a claimant.

D. Innocent Owner Defense

If the government proves that the firearms are subject to forfeiture, then a claimant may still recover the firearms by proving that he or she is an innocent owner.  A claimant can avoid forfeiture by establishing the affirmative defense of innocent ownership by a preponderance of the evidence.  18 U.S.C. §983(d)(1).

With respect to a property interest in existence at the time of the illegal conduct giving rise to the forfeiture took place, the term" innocent owner" means an owner who did not know of the conduct giving rise to forfeiture, or, upon learning of the conduct giving rise for the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.  18 U.S.C. §983(d)(2)(A)(i) and (ii).  To establish an innocent owner defense under these provisions, the claimant must establish that he or she was the owner of the property at the time of the seizure under state and federal law.  <u>United States v. Real Property Located at 5208 Los Franciscos Way</u>, 385 F.3d 1187, 1191 n. 3 (9th Cir. 2004); <u>United States v. Lester</u>, 85 F.3d 1409, 1412 (9th Cir. 1996).  The owner must also establish that he or she did not

14

know the facts giving rise to the forfeiture; it is not sufficient to demonstrate lack of knowledge that the transactions in question were illegal. United States v. 1,679 Firearms, No. CV 06-5014 PJW, 2009 WL 3233518 at *4 (C.D.Cal. Sept. 30, 2009)(citing United States v. Real Property at 874 Gartel Drive, 79 F.3d 918, 924 (9th Cir. 1996)). A general denial of knowledge of the illegal activity is insufficient to establish an innocent owner defense. United States v. Real Property Located at 2621 Bradford Drive, 369 Fed.Appx. 663, 665-66 (6th Cir. 2010).

With respect to a property interest acquired after the conduct giving rise to the forfeiture took place, the term "innocent owner" means a bona fide purchaser or seller for value who did not know and was reasonably without cause to believe that the property was subject to forfeiture. 18 U.S.C. §983(d)(3)(A)(i) and (ii).

Claimants do not argue that Mr. Thompson could have asserted an innocent owner defense. If the government proves that Mr. Thompson did in fact engage in conduct which constituted an offense under §922(a)(1)(A) and that the defendant firearms were involved in the offense, then this conduct furnishes the basis for the forfeiture, and Mr. Thompson would necessarily have had knowledge of the facts giving rise to the forfeiture. Mr. Thompson's estate would also be precluded from asserting an innocent owner defense. The claim of an administrator of a claimant's estate derives from the deceased claimant, and the administrator can only assert defenses that would have been available to the deceased claimant. United States v. Real Property Located at 265 Falcon Road, Civil NO. 08-700-JPG, 2009 WL 1940457 at *6 (S.D.Ill. July 7, 2009); see also Hopper, 106 Ohio St. 292 at 302 (administrator and heir at law of estate stands in the legal shoes of the decedent); Kelley, 193

15

Ohio App.3d at 33 (a decedent's legal representative stands in the shoes of the decedent with respect to his financial and commercial rights and obligations). Further, the estate cannot raise defenses which might be available to individuals who stand to inherit from the estate. United States v. 164 Pieces of Jewelry, 785 F.Supp. 885, 889 (D.Or. 1991).

Mrs. Thompson seeks to assert an innocent owner defense. Insofar as she claims to have had an ownership interest in the defendant firearms at the time of the seizure, she must show that she did not know of the conduct giving rise to forfeiture. There is evidence in the form of the recorded statements of Mr. Thompson to the informant that Mrs. Thompson was "the organizing faction here in this deal" and that she had "been through the gun thing with me from the beginning." Mrs. Thompson testified that she was aware what her husband was paying for the weapons he bought because she was his secretary and did all of the paperwork in every business they owned. However, Mrs. Thompson claims that she was unaware of firearms transactions which factually constituted the illegal sale of firearms without a license. The court has concluded that a genuine dispute exists as to whether Mr. Thompson was engaging in the illegal sale of firearms, and as to which of the firearms were "involved in" or "intended to be used in" the offense. The evidence also raises a genuine dispute as to whether Mrs. Thompson is an innocent owner under 18 U.S.C. §983(d)(2)(A).[2]

---

[2] If Mrs. Thompson claims a property interest in the defendant firearms as an heir of Mr. Thompson's estate, that interest became legally cognizable for purposes of her status as a claimant only upon the death of her husband, which was after the conduct resulting in the forfeiture took place. See Duncan v. Kline, 81 Ohio St. 371, 385, 90 N.E.938 (1910)(presumptive or apparent heir has no present right in property); Slaughter v. Fitzgerald, 66 Ohio App. 53, 67, 31 N.E.2d 744 (1939)(applying the maxim nemo est haeres viventis (no one is the heir of a living person)). As an heir, she is not a bona fide purchaser for value and

V. Conclusion

In accordance with the foregoing, plaintiff's motion for summary judgment (Doc. 60) is denied.  The motion to substitute Mr. Thompson's estate as a party (Doc. 66) is granted.


Date: February 15, 2012            s/James L. Graham
                                   James L. Graham
                                   United States District Judge

---

therefore cannot be an innocent owner under §983(d)(3)(A).  See 265 Falcon Road, 2009 WL 1940457 at *7 (where a person received a property interest as a claimant's heir without conveying any value for the property, that person is not a bona fide purchaser for value under §983(d)(3)(A)); Guida v. Thompson, 160 N.E.2d 153, 159 (Ohio Com.Pl. 1957)(heirs take by inheritance, not by purchase). Therefore, Mrs. Thompson cannot assert an innocent owner defense under §983(d)(3)(A)(i) and (ii).

17